UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

**ST. PAUL MERCURY INSURANCE COMPANY, a Minnesota Corporation,**

Plaintiff,

v.

**JBA INTERNATIONAL, INC.,**

Defendant.

Civil No. 01-297 (JGL ~~MJD~~/JGL)

**ORDER**

**JBA INTERNATIONAL, INC.,**

Plaintiff,

v.

**ST. PAUL MERCURY INSURANCE COMPANY,**

Defendant.

Civil No. 01-2161 (JGL ~~MJD~~/JGL)

APPEARANCES

Richard D. Snyder, Esq., and Emily Duke, Esq., on behalf of JBA International, Inc.

Patricia J. St. Peter, Esq., and Eric Caugh, Esq., on behalf of St. Paul Mercury Insurance Co.

FILED ___ 2002
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD ___
DEPUTY CLERK ___

JONATHAN LEBEDOFF, Chief United States Magistrate Judge

The above-entitled matter came on for hearing before the undersigned Chief Magistrate Judge of District Court on September 6, 2002 on JBA International's Motion to Compel Discovery (Doc. No. 51 in case 01-CV-2161); St. Paul Mercury's Motion to Compel Production of Documents, or in the Alternative to Strike Paragraph e of JBA's Identification of Expert Witnesses (Doc. No. 40 in case 01-CV-297); and St. Paul Mercury's Motion to Compel Discovery (Doc. No. 42 in case 01-CV-297). This Order will address only JBA's motion. The Court will address St. Paul's Mercury's Motions in a separate Order. The case has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1.

**I. FACTS**

These cases arise from an insurance coverage dispute. The two cases have been consolidated in the District of Minnesota.[1] JBA International ("JBA") is a computer software company that sells enterprise resource planning software and services to businesses. JBA purchased a technology insurance policy from St. Paul Mercury Insurance ("St. Paul") to protect itself in the event of lawsuits resulting from actual or alleged errors in its software installations.

---

[1] The policies which are the subject of this litigation were issued in New Jersey. JBA Int'l v. St. Paul Mercury Ins., No. 01-CV-2161, was transferred to this district from the District of New Jersey. (Doc. No. 24 in Case No. 01-CV-2161).

The policy at issue in this case is a "claims made" policy, which means that it applies to "claims or suits" first "made or brought" during the policy period. This policy was in effect from June 30, 1997 to September 21, 1999 and had a $2 million limit, which included defense costs. In addition to the "claims made" policy, JBA also purchased an umbrella policy from St. Paul which had a $7 million limit. The umbrella policy was in effect from June 30, 1998 to September 21, 1999.

After JBA purchased its policies, it was sued by some of its customers. The central issue in the instant dispute is St. Paul's liability in those lawsuits. Specifically, the parties dispute whether the umbrella policy was in effect at the time that the underlying claims were made.

## II. DISCUSSION

The Federal Rules of Civil Procedure provide for liberal discovery. See Fed. R. Civ. P. 26(b)(1); Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978); Hickman v. Taylor, 329 U. S. 495, 501 (1947). "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . [and] reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

A party is allowed to fully explore any relevant facts so that it can present reasoned and informed evidence and theories at trial. In the context of discovery, "relevant" has been defined as encompassing "any matter that bears

on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Hickman, 329 U.S. at 501. Discovery should not be limited to matters in the pleadings because discovery is designed to help establish and clarify the issues in a case. See id. at 500-01. Additionally, discovery should not be limited to the merits of a case because other fact-oriented issues, possibly unrelated to the merits, may arise and properly be the subject of discovery. See Oppenheimer Fund, 437 U.S. at 351.

Limited only by the broad scope of Rule 26(b), a party has the right to request any information within the "possession, custody, or control" of the party being served. Fed. R. Civ. P. 34(a). Although discovery is broad, it is not limitless, and a court may limit discovery if the discovery sought is, inter alia, cumulative or overly burdensome. See Fed. R. Civ. P. 26(b)(2).

JBA seeks discovery on a number issues. Document requests, interrogatory answers, and the designation of 30(b)(6) deposition witnesses are all in dispute. Although JBA failed to comply with the requirements of D. Minn. LR 37.2 when drafting its motion, it did address its discovery requests categorically.[2] St. Paul has responded using the same categories. The Court

---

[2]D. Minn. LR 37.2 provides that the moving party's memorandum in support of any discovery motion regarding interrogatories, document requests, or requests for admissions must "set forth only the particular interrogatories, document requests or requests for admissions which are the subject of the motion, the response thereto, and a concise recitation of why the response or objection is improper." D. Minn. LR 37.2 (emphasis added).

will therefore also address the disputed discovery requests categorically. When the Court finds it necessary to refer to specific requests, it will attempt to put the requests into their proper categories. In addition, the Court will address only the objections and arguments proffered in the Parties' motion papers and at oral argument. The Court assumes that objections not raised in these forums are no longer applicable. This is especially true in light of the fact that many of St. Paul's boiler plate objections are unsupported and, therefore, improper under Fed. R. Civ. P. 33(b)(4) and 34(b). (JBA Mot. Compel at 2-12.)

### A. <u>St. Paul's Objections to JBA's Deposition Notices</u>

Although St. Paul never sought a protective order regarding JBA's deposition notices as required by the Federal Rule of Civil Procedure 37(d), St. Paul now argues that JBA's 30(b)(6) deposition notices are so overbroad that it is impossible to designate a single individual to testify on the topics. Rule 37(d) states that a corporation may not be excused from designating a 30(b)(6) witness without first filing a motion for a protective order. <u>See</u> Fed. R. Civ. P. 37(d). Insofar as St. Paul is now seeking a protective order regarding these notices, the Court declines to issue such an order. St. Paul has not filed the appropriate motion and therefore, JBA has not been afforded the proper opportunity to respond to such a motion. Furthermore, the Court disagrees with St. Paul that its failure to seeks protective orders was merely a "technicality." (St. Paul Mem. Opp. Mot. Compel at 24.) St. Paul suggests that

since JBA did not mention protective orders during the Parties' "meet and confers," St. Paul was not required to file such motions. (Id. at 25.)

It was not JBA's place to suggest that St. Paul seek protective orders. St. Paul is a sophisticated Party represented by experienced and competent counsel. Any perceived waiver of the Rules due to St. Paul's willingness to allow JBA to object to St. Paul's 30(b)(6) topics does not justify St. Paul's failure to seek protective orders. Nonetheless, the Court finds that the following analysis and decisions, which narrow several of JBA's discovery requests, will likely address many of St. Paul's concerns regarding JBA's 30(b)(6) deposition notices.

### B. Whether JBA is Entitled to Discovery Related to St. Paul's Interpretation of Policy Language

JBA seeks discovery regarding St. Paul's interpretation of several policy provisions. Specifically, JBA argues that it is entitled to discovery regarding how St. Paul has interpreted two contract provisions: (1) when a claim is first made, and (2) the "contract price" limitation outlined in the policies' damages definitions. JBA argues that under New Jersey law, it is entitled to discovery on these issues. JBA has divided its request into three categories: (1) evidence regarding drafting history, (2) evidence regarding St. Paul's prior interpretation of policy language made in representations to insurance regulators, and (3) evidence regarding St. Paul's interpretation of identical policy language in other cases ("other insured information").

St. Paul responds that there has been no determination that New Jersey law applies to this case. Furthermore, St. Paul asserts that: (1) evidence regarding drafting history is not relevant to this case; (2) St. Paul has already produced all relevant insurance regulator information; and (3) information regarding St. Paul's interpretation of policy language in other insureds' policies is not relevant to this case, would be unduly burdensome to produce, and would implicate privacy concerns.

**1. Drafting History**

Both Parties agree that this is basically a contract interpretation case. The gravamen of the case is whether, under the policies at issue, JBA is entitled to coverage. Thus, the Court agrees with St. Paul that the basic rules of contract interpretation will likely control this case. While St. Paul is correct in stating that there has not been a determination that New Jersey substantive law controls this case, that fact is not dispositive on the issue of the relevancy of JBA's discovery requests.

St. Paul admits that even under Minnesota law, extrinsic evidence such as drafting history is relevant to interpret ambiguous contact language. See Pederson v. United Serv. Auto. Ass'n, 383 N.W.2d 427, 430 (Minn. Ct. App. 1986). Therefore, should Minnesota law apply, and should the trial court determine that the contract language is ambiguous, extrinsic evidence will be admissible at trial. The Court does not agree with St. Paul's contention that a

finding of ambiguity is necessary before drafting history is relevant. See Bituminous Cas. Corp. v. Tonka Corp., No. CIV. 4-87-392, 1992 WL 605421, at *6 n.4 (D. Minn. Aug. 24, 1992) (stating that discovery regarding drafting history was relevant when ambiguity had not yet been determined, and holding that the information only became irrelevant once the court found no ambiguity in the policy at issue). To that end, the Court agrees with JBA that requiring a finding of ambiguity before allowing discovery of extrinsic evidence is "putting the cart before the horse." If JBA is not allowed to conduct this discovery at this time, the opportunity will be lost.

At this juncture, the Court is satisfied that drafting history is "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Whether or not this evidence, or any evidence it leads to, will be admissible at trial is not before this Court. Thus, the Court finds unpersuasive St. Paul's objections based on relevancy. Since St. Paul has proffered no other objections, this part of JBA's motion is granted and St. Paul must respond to JBA's Interrogatory Nos. 10 and 11 within thirty days of this Order.

The Court has reviewed JBA's July 10, 2002 deposition notice and finds Topics 1 and 2, topics that seem related to this category, overbroad.[3]

---

[3]Topic 1 covers "[a]ll communications between St. Paul and any third parties, including insurance trade associations or other insurers, regarding the development of errors and omissions insurance products for the information technology industry." (JBA Mot. Compel at 7.)

These topics are not limited to certain types of communications, are not limited to communications related to any particular products, and are not limited to any time period. These topics must be stricken from the deposition notice. Therefore, St. Paul must comply with this Order and designate a 30(b)(6) deposition witness or witnesses to respond to JBA's July 10, 2002 deposition notice, as narrowed by the Court, within thirty days of this Order.[4]

**2. Communications with State Regulators**

JBA argues that St. Paul has failed to fully comply with this Court's May 14, 2002 Order. In that Order, the Court found that "all communications with [the State insurance agencies or other regulatory bodies of New Jersey and Minnesota] that relate to the sale or approval for sale of any of the products in the 'Network Solutions'" were discoverable. (Order, May 18, 2002 at 6-7)(quoting JBA's discovery request).

JBA argues that this information is relevant because it will demonstrate any changes in the Network Solution policies over the years, and the reasons for those changes. Specifically, JBA seeks regulatory filings from

---

Topic 2 covers "[a]ll communications between St. Paul and any third parties, including insurance trade associations or other insurers, regarding samples of examples of errors and omissions insurance products for the information technology industry." (JBA Mot. Compel at 8.)

[4]To protect the privacy of St. Paul's insureds, St. Paul must respond to Topic 6 of the July 10, 2002 deposition notice only with redacted communications which do not contain identifying information.

1986 and 2000 relating to its technology general liability policies. JBA has also noticed a 30(b)(6) deposition on the topic of regulatory filings.

St. Paul responds that it has fully complied with the Court's Order, that regulatory filing information that predates or postdates the 1994 versions of the policies at issue in this case are irrelevant, and that the technology general liability policies are not even at issue in this case. St. Paul argues that at the previous motion hearing on this issue, it offered to provide information from New Jersey and Minnesota only as it related to the 1994 version of the policy.(St. Peter Aff. ¶ 3.) St. Paul asserts that the Court adopted this compromise in its May 14, 2002 Order.

The Court agrees with St. Paul that its May 14, 2002 Order is not a "blanket endorsement of the relevance of regulatory filings." (St. Paul Mem. Opp. Mot. Compel at 8-9). However, the Court does not agree that St. Paul has fully complied with that Order. The document request at issue in that Order sought "all communications [with state insurance regulators] that relate to the salc or approval for sale of any of the products in the 'Network Solutions.'" At the hearing on that issue, St. Paul offered to provide all relevant information from New Jersey and Minnesota. The Court found that offer reasonable, and ordered that all such information be produced.

The Court has reviewed the audio recording of the previous motion hearing and, contrary to St. Paul's assertion, finds that St. Paul did not offer to

provide only information related to 1994 regulatory filings. At that hearing, St. Paul's Counsel stated that St. Paul "would be willing to produce Minnesota and New Jersey." At no time did St. Paul limit its compromise offer to communications pertaining to the 1994 version of the policies, or to any particular policies. The request clearly seeks all relevant regulatory filing information. Such information is especially germane in a case like the one at the bar where extrinsic evidence may be admissible at trial. See Part II.B.1., supra. Furthermore, the Court finds that just because St. Paul has not paid out any monies under the technology general liability policies (Zacharski Aff. ¶ 3), that does not necessarily mean that the policies are not at issue in this case. As stated before, at the previous motion hearing St. Paul did not limit its compromise offer by time or policy type. Therefore, the Court finds that pre-1994 and post-1994 filings are discoverable.

Thus, this part of JBA's motion is granted. St. Paul must fully respond to JBA's Document Request No. 25 and designated a 30(b)(6) deposition witness or witnesses to testify on the topics noticed in JBA's July 23, 2002 deposition notice within thirty days of this Order.

### 3. JBA's Discovery Requests Relating to Other Insureds' Information

JBA requests information relating to St. Paul's methods of handling claims similar to those JBA filed with St. Paul. JBA argues that such information is relevant to this case because it will indicate how St. Paul has

previously interpreted contract provisions similar to the provisions at issue in the instant case. St. Paul objects to these requests on the bases of relevancy, burdensomeness, and privacy concerns. The Court will address each of St. Paul's objections separately.

**a. St. Paul's Objections Based on Relevancy**

St. Paul argues that this case is only about St. Paul's obligations under the policies between JBA and St. Paul, and that a comparison with other claims would be pointless since each insurance claim is unique, and the facts of one claim have no bearing on the outcome of another claim. JBA responds that this information is indeed relevant because whether or not JBA was wrongly denied insurance and indemnity coverage will turn, at least in part, on how St. Paul has interpreted its own policy language in the past.

The Court finds that information relating to other policies is relevant to this case. See Armco v. Traveler's Indem. Co., Civil No. 5-91-26, slip op. at 27-30 (D. Minn. Sept. 30, 1993) (holding that information related to an insurer's other insureds seeking coverage under similar policies is relevant and discoverable). It is important for JBA to understand how St. Paul has addressed similar policy language in the past. St. Paul concedes that this case will turn on the interpretation of certain words and phrases contained in the policies. (St. Paul Mem. Opp. Mot. Compel at 10.) JBA represented at the motion hearing that the determination of when a claim is actually made under

the policies is "one of the hottest issues in our case." It is, therefore, prudent to garner all information reasonably related to the interpretation of that language. Although the Court agrees that the unique facts of this case will have a bearing on the ultimate resolution, it does not necessarily follow that such an analysis will take place in a vacuum. Whether or not coverage was extended under similar policy language is indeed relevant to the instant case.

The Court finds St. Paul's reliance on Gopher Oil Co. v. American Hardware Mut. Ins. Co., 588 N.W.2d 756, 765 (Minn. Ct. App. 1999) misplaced for two reasons. First, this Court does not follow state court precedent regarding discovery issues. Second, Gopher Oil addressed the issue of admissibility of other insureds information at trial, not the relevance of such information for discovery purposes. See id.; see also Bituminous Cas., 1992 WL 605421 at *6 n.4 (acknowledging the difference between relevance for discovery and admissibility at trial). The scope of discovery is broad. See Fed. R. Civ. P. 26(b)(1). This discovery is likely to lead to the discovery of admissible evidence. See id.

Courts from other jurisdictions have found information related to other policies issued by the same insurer relevant. See Nestle Foods Corp. v. Aetna Casualty and Surety Co., 135 F.R.D. 101, 106 (D. N.J. 1990) (allowing discovery of drafting language in policies other than those held by Plaintiff); Minn. Mining & Mfr. Co. v. Commercial Union Ins. Co., No. 88-325, 1989 WL

241716, at *1-2 (D. N.J. Oct. 13, 1989) (allowing discovery related to policies involved in two prior actions); Indep. Petrochemical Corp. v. Aetna Cas. & Sur. Co., 117 F.R.D. 283, 287 (D. D.C. 1986) (allowing discovery of other claims involving the chemical at issue in the instant litigation). Therefore, the Court finds St. Paul's objections based on relevance to be without merit.

**b. St. Paul's Objections Based on Burdensomeness**

Since the Court has determined that the information JBA seeks is relevant, St. Paul now has the burden of proving that providing that information is overly burdensome. See Fed. R. Civ. P. 26(b)(2). The Court may limit discovery when the "burden or expense of the proposed discovery outweighs the likely benefit." Id.

In the instant case, St. Paul argues that manually searching its files for similar claims will take hundreds of hours. (St. Paul Mem. Opp. Mot. Compel at 14-15.) This burden, St. Paul argues, does not justify any benefit that may result from the search. JBA asserts that St. Paul has refused to discuss any limits on this discovery, in spite of JBA's willingness to limit its requests. At the motion hearing, JBA represented that it only seeks information related to E & O claims from software companies who submitted claims under the same type of policies JBA has with St. Paul. Furthermore, JBA has narrowed its request based on the size of the other insureds' claims. (JBA Mem. Supp. Mot. Compel at 13.)

St. Paul was originally able to identify 125 technology policies, only a percentage of which are E & O policies, which may contain claims similar to those filed by JBA. (St. Paul's Mem. Opp. Mot. Compel at 13-14.) However, St. Paul argues that many of those 125 policies contain claims other than E & O claims, and that St. Paul does not maintain a data base that allows it to parse out E & O claims. (Id.) Prior to the motion hearing, St. Paul filed a supplemental affidavit in which James Zacharski, a St. Paul Technology Claims Attorney, stated that upon further review, the actual number of relevant files is actually closer to 379.[5] (Zacharski Supplemental Aff. ¶ 6.) It appears that Mr. Zacharski reached this conclusion after engaging in the exact type of search JBA requested at the motion hearing.

At the motion hearing, JBA stated that if St. Paul's searches revealed more than "twenty-five or thirty" relevant policies, JBA would be willing to accept a random production from those policies. Thus, it is obvious that JBA is willing to accept a reasonable number of files. Accordingly, St. Paul must examine seventy-five randomly selected files from the approximately 379 files already identified. This number represents approximately twenty percent of the

---

[5]Mr. Zacharski reached this conclusion by searching for claims coded to the "computer services and software" cause-of-loss code. (Zacharski Supplemental Aff. ¶ 6.) Mr. Zacharski reached an alternative figure of 1313 files by including a search of other cause-of-loss codes. (Id.) The Court finds that the "computer services and software" cause-of-loss code search will likely produce the most relevant material. Therefore, the following burdensomeness analysis will bc conducted using that figure.

potentially relevant files. Whether this examination is conducted completely by hand, or with the aid of computer software, is up to St. Paul.[6] The Court finds that examination of these files should produce relevant discovery without over-burdening St. Paul. If St. Paul's search reveals more than thirty relevant files, St Paul may randomly select thirty files to produce to JBA.

At this juncture, St. Paul is reminded that the fact that production may be burdensome, expensive, or even interfere with a its business operations does not justify a refusal to produce relevant documents. See Wagner v. Dryvit Sys., Inc., No. 4:00CV3072, 2001 WL 1905575, at *4 (D. Neb. Aug. 1, 2001) (citing 7 Moore's Federal Practice § 34.1[3] (3rd ed. 1997)); Snowden v. Connaught Labs, Inc., 137 F.R.D. 325, 332-33 (D. Kan. 1991); In re Richardson-Merrell, Inc. Bendectin Prod. Liab. Litig., 97 F.R.D. 481, 482 (S.D. Ohio 1983). An inefficient filing system which necessitates "heavy expenditures of time and effort to produce requested documents is not a sufficient reason" to frustrate discovery. Snowden, 137 F.R.D. at 333 (citations omitted).

St. Paul may not hide behind its record keeping system to avoid responding to JBA's request. While the Court acknowledges that the discovery it is ordering may involve a large expenditure of resources, the Court finds that

[6] JBA represented at the motion hearing that deposition testimony and other discovery has revealed that, contrary to St. Paul's assertion that these searches must be conducted by hand, St. Paul actually has the software available to conduct further computer assisted searches.

the benefit of the discovery will outweigh the burden it imposes. A review of other claims based on the same policy language, and involving the same type of customer, will likely yield valuable information which will lead to the discovery of admissible evidence. See Fed. R. Civ. P. 26(b)(1). This is especially true in this case where the Parties agree that contract interpretation is a central issue. Therefore, the Court finds that St. Paul's objections based on burdensomeness are now without merit.

c. **St. Paul's Objections Based on Privacy Concerns**

St. Paul argues that if it is required to provide information related to the claims of other insureds, it will violate confidentiality agreements and protective orders in the process. JBA responds that St. Paul is free to redact any information which identifies the parties involved. All JBA is concerned with are the issues in each claim and St. Paul's responses to those issues. For support, JBA cites cases in which important information such as "the policy language involved, the nature of the [problem addressed by the policy provision] and the insurer's interpretation of the policy" was found to be discoverable. (JBA Mem. Supp. Mot. Compel at 14) (quoting Nestle, 135 F.R.D. at 107) (brackets in original). This limitation is in concert with JBA's Interrogatory No. 13 which seeks, inter alia, "the date [any relevant] insurance claim was submitted to St. Paul, the date(s) St. Paul asserted that the claim arose and the factual basis for St. Paul's assertion(s), and the coverage positions taken by St.

Paul and the policyholder." (JBA Mot. Compel at 4.) In addition, JBA argues that the confidentiality agreement in this case will further protect St. Paul and its insureds.

The Court finds that Interrogatory No. 13 contains reasonable limits on discovery. The Court also finds the confidentiality agreement and JBA's willingness to accept redacted documents sufficient protection for St. Paul and its insureds. Once all identifying information is redacted, there is no opportunity for a breach of confidentiality. Furthermore, the Court disagrees with St. Paul that designating documents "Attorneys' Eyes Only" is a pointless gesture. By designating the redacted information "Attorneys' Eyes Only," the information is protected from disclosure to JBA's customers, while allowing JBA's attorneys to fully explore its claims and defenses.

Accordingly, this part of JBA's motion is granted and St. Paul must fully respond to JBA's Document Request No.9 by producing the desired information as gleaned from St. Paul's search of seventy-five randomly selected files. This information must be identified "For Attorneys' Eyes Only." St. Paul must also designate a 30(b)(6) deposition witnesses to testify on Topic 6 of JBA's July 10, 2002 deposition notice.

Notwithstanding the above, the Court agrees with St. Paul that responding to JBA's Interrogatory No.12 will likely eviscerate at least part of the

protections provided for in this Order.[7] Therefore, St. Paul need not respond to Interrogatory No. 12. However, St. Paul still must respond to Interrogatory No. 13 which originally asked St. Paul do the following:

> For each policyholder identified in Interrogatory No. 12, describe any and all claims, including lawsuits, submitted to St. Paul under the Technology and Omissions policies of the type issued to JBA (i.e., Technology General Liability, Technology Errors and Omissions, and Technology Umbrella Coverage policies). Include in your description of each claim the date the claim was submitted to St. Paul, the date(s) St. Paul asserted that the claim arose and the factual basis for St. Paul's assertion(s), and the coverage positions taken by St. Paul and the policyholder.

(JBA Mot. Compel at 4.) The Court finds that St. Paul must answer this interrogatory not with the information of policyholders identified in Interrogatory No. 12, but with the information as it pertains to the policyholders identified after its search of the seventy-five potentially relevant files. St. Paul must provide this information within thirty days of this Order.

### C. **Whether JBA is Entitled to Discovery Related to St. Paul's Expertise in the Industry**

JBA seeks information related to St. Paul's advertising and claims of industry expertise which JBA argues it relied on when it purchased insurance from St. Paul. JBA argues that this information is relevant to its

---

[7]Interrogatory No. 12 asks St. Paul to "[i]dentify. . . all other policyholders of technology policies of the type issued by JBA [sic] (i.e., Technology General Liability, Technology Errors and Omissions, and Technology Umbrella Coverage Policies) who are engaged in software sales, development and/or installation." (JBA Mot. Compel at 3.)

claims under the New Jersey Consumer Fraud Act. St. Paul responds that JBA has failed to demonstrate the necessary causal connection between any of St. Paul's promotional materials or representations and JBA's losses. For support, St. Paul cites the deposition testimony of Jane Marshaleck, JBA's former CFO, who purchased the policies at issue. In her deposition, Ms. Marshaleck testified that she did not rely on any of St. Paul's promotional materials or representations when deciding to purchase the policies. (St. Peter Aff. Ex. M at 67-68.) According to St. Paul, this alleged lack of reliance demonstrates that discovery related to St. Paul's promotional materials and expertise in the industry is irrelevant.

The Court disagrees. At this point in the litigation, the Court need not determine whether JBA's claims will ultimately prove successful at trial. At this point, it is enough that the promotional materials are relevant to JBA's claims under the New Jersey Consumer Fraud Act. This is especially true when one considers that Ms. Marshaleck also testified that she relied on the expertise of Alan Dash, an insurance broker who recommended the St. Paul policies to JBA. (Id. at 65.) Mr. Dash testified that he relied on St. Paul's representations concerning the breadth of St. Paul's coverage and St. Paul's ability to create policies specifically tailored to the needs of software companies. (Duke Aff. Ex. O at 209-11.) Contrary to St. Paul's assertions, JBA's claims under the New Jersey Consumer Fraud Act are not so unsupported that they should be

withdrawn with prejudice. (St. Paul Mem. Opp. Mot. Compel at 24.) The claims are still part of this case and JBA is entitled to discovery on these issues.

Notwithstanding the above, the Court finds that St. Paul need not provide information which did not exist at the time JBA purchased its insurance policies, such as information contained only in St. Paul's website. (Zacharski Aff. ¶ 13.) St. Paul, however, is cautioned that just because something is mentioned on the website, that does not necessarily mean that the information is shielded from discovery. If the relevant information existed at the time JBA purchased it policies, it must be produced.

JBA posits that "[t]he basis for St. Paul's representations on its website, that it has particular expertise in the industry, is the same basis for it representations to JBA and Mr. Dash in 1997 and 1998 that it possessed an expertise in the industry." (JBA Mem. Supp. Mot. Compel at 19.) The Court finds this argument persuasive. It is the "[bases] for the representations" which are relevant. Therefore, St. Paul must fully respond to JBA's Interrogatories 14 and 15, and Document Request Nos. 2, 3, 4, 5, 14, 15, and 16 within thirty days of this Order.

**D. <u>JBA's Request for Fees</u>**

JBA's request for fees is denied.

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED:**

(1) JBA International's Motion to Compel Discovery (Doc. No. 51 in case 01-CV-2161) is **GRANTED IN PART** and **DENIED IN PART** as set forth fully in the body of this Order; and

(2) St. Paul Mercury Insurance Company must fully respond to any outstanding discovery requests and designate 30(b)(6) witnesses by October 14, 2002.

Dated: September 12, 2002

JONATHAN LEBEDOFF
Chief United States Magistrate Judge