**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

**ST. PAUL MERCURY INSURANCE COMPANY, a Minnesota Corporation,**

Plaintiff,

v.

**JBA INTERNATIONAL, INC.,**

Defendant.

Civil No. 01-297 (MJD/JGL)

**ORDER**

---

**JBA INTERNATIONAL, INC.,**

Plaintiff,

v.

**ST. PAUL MERCURY INSURANCE COMPANY,**

Defendant.

Civil No. 01-2161 (MJD/JGL)

---

APPEARANCES

Richard D. Snyder, Esq., and Emily Duke, Esq., on behalf of JBA International, Inc.

Patricia J. St. Peter, Esq., and Eric Caugh, Esq., on behalf of St. Paul Mercury Insurance Co.

---

FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

JONATHAN LEBEDOFF, Chief United States Magistrate Judge

The above-entitled matter came on for hearing before the undersigned Chief Magistrate Judge of District Court on September 6, 2002 on JBA International's Motion to Compel Discovery (Doc. No. 51 in Case 01-CV-2161), St. Paul Mercury's Motion to Compel Production of Documents, or in the Alternative to Strike Paragraph e of JBA's Identification of Expert Witnesses (Doc. No. 40 in Case 01-CV-297); and St. Paul Mercury's Motion to Compel Discovery (Doc. No. 42 in Case 01-CV-297). This Order will address only St. Paul Mercury's motions. The Court has addressed JBA International's motion in a separate Order. The case has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1.

## I. FACTS

These cases arise from an insurance coverage dispute. The two cases have been consolidated in the District of Minnesota.[1] JBA International ("JBA") is a computer software company that sells enterprise resource planning software and services to businesses. JBA purchased a technology insurance policy from St. Paul Mercury Insurance ("St. Paul") to protect itself in the event

[1] The policies which are the subject of this litigation were issued in New Jersey. JBA Int'l v. St. Paul Mercury Ins., No. 01-CV-2161, was transferred to this district from the District of New Jersey. (Doc. No. 24 in Case No. 01-CV-2161).

of lawsuits resulting from actual or alleged errors in its software installations. The policy at issue in this case is a "claims made" policy, which means that it applies to "claims or suits 'first made or brought' during the policy period." This policy was in effect from June 30, 1997 to September 21, 1999 and had a $2 million limit, which included defense costs. In addition to the "claims made" policy, JBA also purchased an umbrella policy from St. Paul which had a $7 million limit. The umbrella policy was in effect from June 30, 1998 to September 21, 1999.

After JBA purchased its policies, it was sued by some of its customers. The central issue in the instant dispute is St. Paul's liability in those lawsuits. Specifically, the parties dispute whether the umbrella policy was in effect at the time that the underlying claims were made.

## II. DISCUSSION

The Federal Rules of Civil Procedure provide for liberal discovery. See Fed. R. Civ. P. 26(b)(1); Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978); Hickman v. Taylor, 329 U. S. 495, 501 (1947). "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . [and] reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Limited only by the broad scope of Rule 26(b), a party has the right to request any information within the "possession, custody, or control" of the party being served. Fed. R. Civ. P.

34(a). Although discovery is broad, it is not limitless, and a court may limit discovery if the discovery sought is, inter alia, privileged, cumulative or overly burdensome. See Fed. R. Civ. P. 26(b)(2).

**A. St. Paul's Motion to Compel Discovery**

In this motion, St. Paul moves the Court for an order compelling production of documents withheld by JBA. St. Paul requests "[a]ll communications between JBA and its defense counsel" relating to the defense and settlement of the underlying lawsuits that serve as the basis for the instant case. (St. Paul's Mem. Supp. Mot. Compel at 2.) In particular, St. Paul is seeking communications concerning defense counsel's evaluation of JBA's potential exposure for liability and damages with respect to each of the underlying cases. JBA objects on the grounds that the information sought is protected by attorney-client privilege and the work product doctrine.

St. Paul takes the position that JBA has waived any privilege or work product protection with respect to these communications because JBA identified its defense counsel as potential testifying experts. St. Paul argues that by doing so JBA has put the protected communications "at issue" and has accordingly waived any privilege or work product protection. JBA responds that St. Paul's motion is based upon a misstatement of the "at issue" doctrine and argues that it acts as a waiver only to such communications that a party actually relies upon or offers into evidence. According to JBA, because its

defense counsel will neither rely on nor offer into evidence the contents of any privileged communications, those communications are not "at issue" in this case and are therefore not subject to waiver.

**B. At-Issue Waiver of the Attorney-Client Privilege**

The attorney-client privilege protects communications made between a lawyer and a client in confidence for the purpose of seeking, obtaining, or providing legal assistance. Kobluk v. Univ. of Minn., 574 N.W.2d 436, 440 (Minn. 1998) (quotation omitted).

A party may waive the protection of the attorney-client privilege either expressly or by implication. United States v. Cote, 456 F.2d 142, 144 (8th Cir. 1972) (citations omitted). In determining whether there has been an implied waiver, two factors are particularly relevant: implied intention and, fairness and consistency. See Sedco Int'l, S.A. v. Cory, 683 F.2d 1201, 1206 (8th Cir. 1982). As the Eighth Circuit noted in Sedco, waiver by implication typically occurs under one of three circumstances, none of which is present here: (1) when a client testifies concerning portions of the attorney-client communication; (2) when a client places the attorney-client relationship directly at issue, as, for example, in a malpractice claim; and (3) when a client asserts reliance on an attorney's advice as an element of a claim or defense. See id. (citations omitted).

St. Paul would have this Court extend the application of at-issue waiver to a situation where, as here, an insured identifies its defense counsel in the underlying lawsuits as potential testifying experts in a subsequent indemnification action against the insurer. To support its claim, St. Paul relies exclusively on Pamida, Inc. v. E.S. Originals, Inc., 281 F.3d 726 (8th Cir. 2002). The Court finds that St. Paul's reliance on Pamida is misplaced for two reasons. First, the Eighth Circuit in Pamida applied Nebraska law concerning implied waiver. Although no determination has been made as to whether Minnesota or New Jersey substantive law controls this case, evidentiary privileges are to be determined in accordance with state law in diversity cases. See Fed. R. Evid. 501; Simon v. G.D. Searle & Co., 816 F.2d 397, 402 (8th Cir. 1987).

Second, the Court agrees with JBA that St. Paul has overstated the holding in Pamida. (JBA Mem. Opp. Mot. Compel at 11-12.) Unlike the broad discovery request at issue here, Pamida addressed specific discovery requests dealing with discrete topics. See 281 F.3d at 728-29. In Pamida, the plaintiff filed an action seeking indemnification for costs and attorneys' fees incurred while defending and settling an underlying lawsuit. See id. The defendant sought deposition testimony from the attorneys in the underlying lawsuit and the production of unredacted billing statements detailing their representation. See id. The plaintiff refused to produce the documents or permit its attorneys

to be deposed. See id. at 729. The court held that the plaintiff waived attorney-client privilege as to the discovery requests at issue, namely, the deposition testimony of the plaintiff's counsel in the underlying lawsuits and unredacted billing statements. See id. at 731-32.

Properly read, Pamida is consistent with the implied waiver law of both New Jersey and Minnesota. In fact, New Jersey courts have roundly rejected broad applications of the at-issue doctrine and have specifically rejected extending it to the type of situation presented in the instant case. See, e.g., NL Indus., Inc. v. Commercial Union Ins. Co., 144 F.R.D. 225, 232-33 (D.N.J. 1992) (applying New Jersey state law and holding that simply because a plaintiff puts insurance coverage at issue "does not itself mean that the plaintiff has given up, blanket-wise, all of the privileges that have been bestowed upon attorneys"); North River Ins. Co. v. Philadelphia Reins. Corp., 797 F. Supp. 363, 370 (D.N.J. 1992) (adopting Delaware state law and holding that the at issue doctrine "should be construed narrowly to create an implied waiver . . . only when a party puts 'in issue' the contents of an attorney-client communication"); Pittston Co. v. Allianz Ins. Co., 143 F.R.D. 66, 71-72 (D.N.J. 1992) (applying New Jersey state law and holding that "at issue" waiver applies only "when the party has asserted a claim or defense that he intends to prove by use of the privileged materials").

In NL Industries, an insured sued its insurers seeking indemnity coverage with respect to underlying environmental claims. See NL Indus., 144 F.R.D. at 227. The insurers, in turn, moved for the discovery of documents relating to the insured's defense of the underlying claims, arguing that they were entitled to them under at issue doctrine. See id. at 233. In rejecting this argument, the court noted that much of the relevant and discoverable information concerning the underlying claims had already been produced, that the requisite showing of need for the information had not been made, and that less obtrusive means for obtaining the information were available. See id.

Moreover, although the parties have not cited any Minnesota case directly on point, the Court finds that Minnesota courts have found implied waivers of the attorney-client privilege only in limited circumstances. See, e.g., Swanson v. Domning, 80 N.W.2d 716, 722 (Minn. 1957) (finding that "[w]here the client voluntarily testifies to statements alleged to have been made to an attorney or statements made by the attorney to the client, . . . the client has waived the privilege as to the things testified to by the client . . . ."); Schuler v. Tahash, 154 N.W.2d 200, 205 (Minn. 1967) (holding that privilege is impliedly waived where a client discloses the contents of the privileged communications and where the client charges attorney incompetence). The Court has found no Minnesota case applying implied waiver to situations similar to the instant case, and the Court declines to do so here.

While the Court acknowledges that identifying JBA's former defense counsel as potential experts presents a unique situation, the Court does not conclude that this situation automatically makes waiver any more likely. In the absence of Minnesota law finding implied waiver under these circumstances, and in the presence of New Jersey law ruling against it, the Court finds that JBA has not waived the privilege for several reasons. First, St. Paul is not entitled to privileged communications simply by virtue of the fact that JBA's underlying defense counsel may testify at trial. That certain information in the possession of JBA's former defense counsel might be disclosed at trial does not mean that the communications are no longer privileged. At the motion hearing and in its motion papers, JBA repeatedly represented to the Court that it has no intention to prove its case by reliance on any privileged communications. (JBA Mem. Opp. Mot. Compel at 1, 5, 10.) Thus, it cannot be said that JBA is using the attorney-client privilege as a "sword and shield" through selective disclosure of privileged documents. See Bieter Co. v. Blomquist, 156 F.R.D. 173, 179 (D. Minn. 1994) (finding waiver where assertion would allow privilege to be used as both shield and sword). St. Paul has not identified any other manner through which JBA has placed the contents of any privileged communication at issue.

Second, as in NL Industries, JBA has already produced much of the relevant and discoverable information concerning the underlying lawsuits. St. Paul has received from JBA all the pleadings, depositions, and other discovery materials that were exchanged between JBA and the plaintiffs in the underlying cases. St. Paul has also received copies of all communications and correspondence between JBA's defense counsel and the underlying claimants with regard to settlement discussions and agreements. Unlike Pamida, in which the plaintiff refused to provide deposition testimony and attorney billing statements, JBA has provided St. Paul with unredacted billing statements and has not objected to St. Paul deposing the attorneys concerning the work they performed in the underlying suits. At the time of the motion hearing, St. Paul had not deposed any of those attorneys. Thus, St. Paul has failed to demonstrate how the information already obtained and information prospectively available are insufficient to defend itself against JBA's indemnification claims.

Finally, it appears as though St. Paul's primary goal in seeking production of privileged documents is so that it can test the veracity and completeness of JBA's disclosure regarding the facts of the underlying suits. The Court rejects this ground for abrogating the attorney-client privilege because such a construction would significantly expand the traditional contours of the privilege. In short, to find waiver here would be premature.

When and until such time as JBA intends to use privileged materials at trial, there is no implied waiver of attorney-client privilege. Rather than allow St. Paul to conduct a fishing expedition through attorney-client communications, the Court concludes that otherwise discoverable information can be obtained through less intrusive means such as depositions or interrogatories. Accordingly, this part of St. Paul's motion is denied.

### C. **Work Product Doctrine**

The work product doctrine protects all documents and tangible things prepared in anticipation of litigation or trial. See Fed. R. Civ. P. 26(b)(3). The doctrine was designed to prevent "unwarranted inquiries into the files and mental impressions of an attorney" and "recognizes that it is 'essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel.'" Simon v. G.D. Searle & Co., 816 F.2d 397, 402 (8th Cir. 1987) (quoting Hickman v. Taylor, 329 U.S. 495 (1947)). The work product doctrine is broader than the attorney-client privilege. See In re Murphy, 560 F.2d 326, 337 (8th Cir. 1977). Moreover, it extends to documents prepared in anticipation of or for previous litigation, regardless of whether the previous litigation was related or unrelated to the case in which discovery is sought. See id. at 334-35. In Murphy, the Eighth Circuit recognized that the work product doctrine would be attenuated if it were limited to documents that were prepared in the case for which discovery is sought. See id.

There are two types of protected work product. Ordinary work product is subject to production only upon a showing of substantial need and inability to secure the substantial equivalent without undue hardship. See Baker v. Gen. Motors Corp., 209 F.3d 1051, 1054 (8th Cir. 2000). The burden of proving substantial need or undue hardship is on the party seeking discovery. See Hickman, 329 U.S. at 511. Opinion work product includes documents that contain the mental impressions, conclusions, or opinions of an attorney and, except in rare and extraordinary circumstances, enjoys almost absolute immunity from discovery. See id.

Given the broad scope of St. Paul's discovery request—all communications between JBA and its defense counsel for each of the underlying lawsuits—the Court is unable to fashion a proper order compelling JBA to produce all of the potentially responsive documents. Certainly, St. Paul cannot expect this Court to compel JBA to produce every communication that is arguably relevant to the claim for coverage. It is evident that some, if not most, of the materials that St. Paul now seeks from JBA fall under the rubric of the work product doctrine. Even if all the documents in question were assumed to be ordinary work product, the Court finds that St. Paul has not shown a substantial need for the documents or that the substantial equivalent of information cannot be obtained through other means. Nor has St. Paul

demonstrated that extraordinary circumstances exist which would allow them access to opinion work product documents to the extent they exist.

Rather, St. Paul asserts that privilege and work product protections have been waived, and that the information is highly relevant and critical to its defense. While the Court acknowledges that work product protection is not absolute and may, under certain circumstances, be waived, the Eighth Circuit has recognized that the privilege should be "applied in a commonsense manner in light of reason and experience as determined on a case-by-case basis." Pittman v. Frazer, 129 F.3d 983, 988 (8th Cir. 1997). After a thorough review of St. Paul's motion and oral argument on the matter, the Court cannot discern any reason why St. Paul is entitled to privileged information. The Court is left with a vague and unsubstantiated claim that JBA's defense counsel will invariably use privileged information regarding the underlying lawsuits and that discovery concerning those matters should not be denied. Such a request amounts to an impermissible fishing expedition into privileged matters. The Court will not sanction such an expedition.

In conclusion, the Court finds that St. Paul has not met its burden to overcome JBA's attorney-client privilege and work product immunity claims. Therefore, St. Paul's motion is denied.

Accordingly, based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED:**

(1) St. Paul's Motion to Compel Production of Documents, or in the Alternative to Strike Paragraph e of JBA's Identification of Expert Witnesses (Doc. No. 40 in Case No. 01-CV-297) is **DENIED**;

(2) St. Paul's Motion to Compel Discovery (Doc. No. 42 in case 01-CV-297) is **DENIED.**

Dated: September 20, 2002

JONATHAN LEBEDOFF
Chief United States Magistrate Judge