**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

**ST. PAUL MERCURY INSURANCE COMPANY, a Minnesota Corporation,**

Plaintiff,

v.

**JBA INTERNATIONAL, INC.,**

Defendant.

Civil No. 01-297 (JNE/JGL)

**ORDER**

**JBA INTERNATIONAL, INC.,**

Plaintiff,

v.

**ST. PAUL MERCURY INSURANCE COMPANY,**

Defendant.

Civil No. 01-2161 (JNE/JGL)

APPEARANCES

Richard D. Snyder, Esq., and Emily Duke, Esq., on behalf of JBA International, Inc.

Patricia J. St. Peter, Esq., and Eric Caugh, Esq., on behalf of St. Paul Mercury Insurance Co.

MAY 29 2003
FILED
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD
DEPUTY CLERK

JONATHAN LEBEDOFF, Chief United States Magistrate Judge

The above-entitled matter came on for hearing before the undersigned Chief Magistrate Judge of District Court on May 14, 2003 on JBA International's Motion to Compel Discovery (Doc. No. 93 in case 01-CV-297 and Doc. No. 107 in case 01-CV-2161), and JBA International's Motion to Compel Compliance with Order Regarding Other Claims Filed (Doc. No. 96 in case 01-CV-297 and Doc. No. 110 in case 01-CV-2161). The case has been referred to the undersigned for resolution of pretrial matters pursuant to 28 U.S.C. § 636 and D. Minn. LR 72.1.

## I. FACTS

These cases arise from an insurance coverage dispute. The two cases have been consolidated in the District of Minnesota. The facts of the cases are well known to the Parties and the Court. For current purposes, it is enough to state that after JBA purchased its policies from St. Paul, JBA was sued by nine of its customers. The central issue in the instant lawsuits is St. Paul's liability in those cases ("the underlying cases"). JBA reached settlements in seven of the nine cases, and then turned to St. Paul for reimbursement under its insurance policies. In the instant motions, JBA seeks further responses to certain discovery requests.

## II. DISCUSSION

The Federal Rules of Civil Procedure provide for liberal discovery. See Fed. R. Civ. P. 26(b)(1); Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978); Hickman v. Taylor, 329 U. S. 495, 501 (1947). "Parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party . . . [and] reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).

A party is allowed to fully explore any relevant facts so that it can present reasoned and informed evidence and theories at trial. In the context of discovery, "relevant" has been defined as encompassing "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." Hickman, 329 U.S. at 501. Discovery should not be limited to matters in the pleadings because discovery is designed to help establish and clarify the issues in a case. See id. at 500-01. Additionally, discovery should not be limited to the merits of a case because other fact-oriented issues, possibly unrelated to the merits, may arise and properly be the subject of discovery. See Oppenheimer Fund, 437 U.S. at 351.

Limited only by the broad scope of Rule 26(b), a party has the right to request any information within the "possession, custody, or control" of the party being served. Fed. R. Civ. P. 34(a). Although discovery is broad, it is not

limitless, and a court may limit discovery if the discovery sought is, inter alia, cumulative or overly burdensome. See Fed. R. Civ. P. 26(b)(2).

**A. JBA International's Motion to Compel Discovery**

JBA seeks additional discovery responses to interrogatories and document requests. JBA has divided its request into four broad categories, and only occasionally refers to specific discovery requests. The Court will address the requests using JBA's categories, and will only refer to specific discovery requests as necessary.

**1. Factual Bases for St. Paul's Coverage Determinations**

JBA argues that it is entitled to information related to St. Paul's determination that no portion of the settlements JBA reached in the underlying cases are covered by the policies at issue in this case. Specifically, JBA seeks information about what portions of the underlying settlements St. Paul avers were for "covered claims," that is, claims that are covered under the policies. JBA's Interrogatory No. 23 asks St. Paul the following:

> Do you contend that any portion of the settlements that JBA has reached in the underlying lawsuits involve settlements of non-covered claims? If so, state which portion of each settlement is attributable to non-covered claims and state all facts supporting your contention and identify all documents relevant thereto and all witnesses having knowledge thereof.

St. Paul answered that all the settlements involve exclusively non-covered claims, and that no portion of underlying settlements is covered under the policies at issue in this case. St. Paul did not provide any facts supporting this

contention, and objected to producing such information based on the attorney-client privilege and the work-product doctrine.

Document Request Nos. 51, 52, 58, 59, and 60 seek documents which support St. Paul's determination of what portions of the underlying settlements are, or are not, covered by the policies at issue in this case. St. Paul responded that it had previously produced all responsive documents, and that other documents were protected by the work product doctrine and the attorney-client privilege. (Caugh Aff. Ex. E at 3.) St. Paul then went on to identify, on a case by case basis, why it thinks the settlements involve non-covered claims. (Id. at 3-7.) St. Paul also named individuals with knowledge supporting St. Paul's positions. (Id. at 4-7.)

The point of disagreement seems to be the portions of St. Paul's responses which state that St. Paul's answers are based on the following list of supporting documents. St. Paul included a listing for each underlying case which contains several, or all, of these representations:

> The facts supporting St. Paul's contention with respect to [the individual underlying case] are located in "the documents produced in the [underlying] lawsuit," "the pleadings filed in the [underlying] lawsuit," "the depositions taken in the [underlying] lawsuit," "the expert reports in the [underlying] lawsuit," "the files of JBA's defense counsel in the [underlying] lawsuit," and "the correspondence between St. Paul and JBA's representatives contained in St. Paul's claim file for the [underlying] claim."

(Id. at 4-7.)

St. Paul argues that by revealing documents which support its claims, they will reveal the work product of St. Paul's attorneys. JBA argues that St. Paul cannot hide behind the work product doctrine and attorney-client privilege to prevent production of factual information. The Court agrees.

JBA is not seeking attorney impressions. JBA is merely seeking underlying facts. Facts are discoverable. See Mead Corp. v. Riverwood Natural Resources Corp., 145 F.R.D. 512, 518, 521. (D. Minn. 1992). The types of documents identified in St. Paul's answers were not prepared by St. Paul in anticipation of this litigation, and are not entitled to work product protection. Importantly, these requests are not directed to counsel, as they were in the cases cited by St. Paul, but rather are directed to a Party.[1] St. Paul's selection of documents cannot fairly be said to implicate the work product of its attorneys. Moreover, even should St. Paul's counsel select the documents upon which its claims are based, when discovery is directed towards obtaining "factual evidentiary material which forms the factual basis for asserting defenses, . . . [a]ny insight into counsel's understanding of the case or of defenses is outweighed by contribution to the efficacious operation of the judicial system which expedited disclosure provides." Id. at 521. To hold

[1]Shelton v. American Motors Corp., 805 F.3d 1323 (8th Cir. 1986) involved a request for documents that in-house counsel had selected for use during litigation. Pamida, Inc. v. E. S. Originals, Inc., 281 F.3d 726 (8th Cir. 2002) involved the depositions of attorneys who had represented a party in an underlying action.

otherwise, would be to send JBA into trial without any idea of the specific facts upon which St. Paul bases its claims. Just because the facts exist in document form, rather than merely anecdotal or verbal form, does not shield them from discovery. Withholding these documents is at odds with the spirit of our discovery rules which are designed to provide a level playing field and to sharpen the issues of the case. See id. at 516.

St. Paul also argues that it has produced all documents as they are maintained in the ordinary course of business. This production includes hundreds of thousands of pages of documents. (JBA Mot. Compel at 12.) The Court does not agree with St. Paul. The Court finds that directing JBA to voluminous documents does not fulfill St. Paul's obligations under the Rules. While it is true that a party may choose to produce documents for inspection in the way they are kept in the usual course of business, see Fed. R. Civ. P. 34(b), the overriding purpose of contention discovery is to allow parties to discover the bases for the opposing party's claims.

In this case, the Court finds that justice requires St. Paul to identify which documents are responsive to JBA's discovery requests. To support their positions, both Parties cite cases from other jurisdictions. The Court finds persuasive the cases cited by JBA which require parties to specifically identify, rather than re-produce, those previously produced documents that are responsive to new discovery requests. See Diglio v. Air

Prod. & Chem., Inc., No. CIV.A.95-7818, 1998 WL 126918, at *17 (E.D. Pa. Mar. 17, 1998); Fridkin v. Minnesota Mutual Life Ins. Co., No. 97 C 0332, 1998 WL 42322, at *3 (N.D. Ill. Jan 29, 1998). To hold otherwise would be to put JBA in the very same position it was in before the hearing on this matter. It serves no purpose for the Court to overrule St. Paul's work product objections, only to allow St. Paul to refuse to identify responsive documents.

Therefore, this part of JBA's motion is granted. St. Paul must fully answer these interrogatories and document requests within thirty days of this Order.

### 2. JBA's Alleged Misrepresentations

#### a. Misrepresentations to Customers

JBA avers that St. Paul is denying coverage in the underlying cases, inter alia, because JBA allegedly made misrepresentations to its customers. JBA propounded discovery requests seeking the bases for these claims. Specifically, JBA's Interrogatory No. 21 asks the following:

> Do you contend the JBA made fraudulent statements or misrepresentations to any of its customers? If so, explain all facts which support that contention and identify all documents relating thereto and witnesses who have knowledge thereof.

St. Paul answered this interrogatory by stating that in two of the underlying cases the plaintiffs asserted that JBA made fraudulent misrepresentations, and directed JBA to certain categories of documents from the underlying cases which St. Paul contends support the prior plaintiff's misrepresentation

allegations. Indeed, in its motion papers St. Paul states that "[w]hether St. Paul contends the JBA made misrepresentations to its customers is irrelevant to this coverage litigation." (St. Paul Mem. Opp. Mot. Compel at 7.) JBA argues that this answer is nonresponsive.

The Court agrees with JBA. If St. Paul does not contend that JBA made misrepresentations to its customers, JBA must so state. If JBA contends that JBA made such misrepresentations, it must back up its claims. St. Paul's coy answer does not advance discovery in this case. JBA is left to wonder whether St. Paul claims that JBA made misrepresentations to its customers or not. For the reasons articulated in Part II.A.1., supra, the Court finds that insofar as St. Paul is relying on the work product doctrine or a Rule 34(b) choice to produce documents as they are kept in the ordinary course of business, those objections are overruled. This part of JBA's motion is granted. St. Paul must provide complete answers to the relevant interrogatories and document requests within forty-five days of this Order.

**b. Misrepresentations to St. Paul**

At the motion hearing, the Parties represented that St. Paul is withdrawing its objections based on misrepresentations made to St. Paul. This part of JBA's motion is denied as moot.

### 3. St. Paul's Claim of Late Notice

At the motion hearing, the Parties represented that this part of JBA's motion is moot. Therefore, it will be denied as such.

### 4. St. Paul's Interpretation of Identical Policy Language

#### a. St. Paul's Communications with New York and California Insurance Regulators

In a prior Order, this Court ordered St. Paul to produce its communications with the insurance regulators of New Jersey and Minnesota, the two states most affected by this litigation. This was in response to St. Paul's objection to producing regulator information from all fifty states. JBA now seeks information related to California and New York because JBA's coverage expert contends that those two states often require more extensive filings than other states.

The Court finds this new discovery unwarranted. As the Court stated in its May 14, 2002 Order, filings from states other than the states in which the policies were issued have little or no relevance to the policies at issue in this case. (Order, May 14, 2002 at 7) (quotations omitted). Furthermore, the Court still finds persuasive the affidavit of a St. Paul employee who stated that the information provided to all fifty states is essentially the same. (Id.) (citing O'Keefe Aff. ¶ 5.) Therefore, this part of JBA's motion is denied.

**b. Other Cases in Which Coverage Was Litigated**

Interrogatory No. 19 asks St. Paul to "[i]dentify all cases in which coverage under any of St. Paul's Technology E&O policies has been litigated." In response, St. Paul has provided a list which does not identify any case names or docket numbers. St. Paul has also produced the deposition testimony of outside coverage counsel identifying the opposing party in just one case. St. Paul argues that the requested discovery is overbroad and irrelevant.

The Court finds St. Paul's litigation stance regarding the policy language at issue relevant to the instant case. However, the Court finds information related to any of St. Paul's Technology E&O policies overbroad. JBA is entitled to a list of cases involving the policies at issue in the instant cases. Thus, this part of JBA's motion is granted as to a list of cases involving the policies at issue in the instant cases, and denied in all other respects. St. Paul must provide the list within forty-five days of this Order.

**c. Information Related to Training**

During depositions, JBA learned that St. Paul's technology unit meets weekly to "discuss new legal trends, new policy forms, anything that is pertinent to what we are doing within our unit." (JBA Mem. Supp. Mot. Compel at 19) (quoting Girard dep.) St. Paul originally refused to answer this interrogatory. However, at the Parties' meet and confer, St. Paul agreed to search for relevant information from the two St. Paul employees involved in

processing JBA's claims. St. Paul admits that it found notes, but refuses to produce them because St. Paul states that they are irrelevant because they relate to administrative and personnel issues. JBA avers that it, not St. Paul, should decide what is relevant to this litigation. To support this argument, JBA asserts that administrative and personnel issues could be relevant if, for example, they "referred to the need for more claims training," an issue that is relevant to JBA's contention that St. Paul mishandled JBA's claims.

This information is relevant and must be produced. Obviously, production will not be burdensome since St. Paul has already compiled the documents for its own review. Our scope of discovery is broad. See Fed. R. Civ. P. 26(b). Furthermore, the Court finds that this narrowed request is tailored to lead to the discovery of admissible evidence. Thus, this part of JBA's motion is granted. St. Paul must provide responsive documents within thirty days of this Order.

In conclusion, JBA's motion to compel is granted in part, denied in part, and denied as moot in part.

**B. JBA International's Motion to Compel Compliance with Order Regarding Other Claims Filed**

JBA seeks an order requiring St. Paul to comply with this Court's September 12, 2003 Order ("the Order"). In the Order, the Court required St. Paul to, inter alia, respond to JBA's Document Request No. 9 and Interrogatory No.13 with information gleaned from thirty randomly selected claims files.

(Order, Sept. 12, 2002 at 18 -19.) Those discovery requests sought information related to underwriting and claims files of St. Paul's other insureds for claims arising under the policies at issue in this case (Doc. Req. No. 9) and "any and all claims, including lawsuits, submitted to St. Paul under the type of policies issued to JBA" (Int. No. 13). The Court held that St. Paul could redact identifying information, and could designate the materials "Attorneys' Eyes Only." (Id. at 18.) St. Paul appealed, and on January 15, 2003, the Honorable Joan N. Ericksen affirmed the Order.

St. Paul has now produced documents to JBA. However, JBA argues that St. Paul has withheld so much information, and has so heavily redacted the documents it has produced, that the production is all but useless.

St. Paul responds that it has complied with the Order. St. Paul avers that it correctly withheld certain documents and appropriately redacted others. Although St. Paul provided a privilege log for the documents it withheld, it did not provide a privilege log for its redactions. St. Paul did offer to provide justification for its redactions on a case by case basis, should JBA request such explanations. The Court will now address each of St. Paul's objections. Since St. Paul has both withheld documents and redacted documents on the bases of all these objections, the Court's decision regarding a particular objection will apply to both withheld documents and redacted documents.

**1. St. Paul's Joint Defense Objections**

St. Paul refuses to produce some documents based on the "joint defense" or "common interest" doctrine. St. Paul did not assert this defense in its original objections to JBA's discovery requests or at the previous motion hearings. Therefore, the Court finds that St. Paul has waived this objection. See Fed. R. Civ. P. 33(b) (4) (any untimely objection is waived); Fed. R. Civ. P. 34(b) ("reasons for objection shall be stated [in response to document request]") (emphasis added). This includes St. Paul's objections based on the attorney-client privilege and the work product doctrine which St. Paul seems to tie entirely to its joint defense objections. (St. Paul Mem. Opp. Mot. Compel Compliance at 8-10.)

**2. Public Documents**

Exhibit 5 to Richard Snyder's affidavit is a document St. Paul produced regarding lawsuits involving its other insureds. The name of St. Paul's insured and the products at issue in the lawsuit are redacted. The Court can comprehend of no reason why St. Paul should redact this public information. To do so based on JBA's offer to accept redacted documents flies in the face of St. Paul's good faith obligations. St. Paul must provide JBA with unredacted information regarding lawsuits related to the pertinent policies. This information is a matter of public record, and St. Paul's insureds have no expectation of privacy in information contained in publicly filed cases. See Cox

Broadcasting v. Cohn, 420 U.S. 494, 495 (1975). St. Paul has this information at its disposal, and it is much less burdensome for St. Paul to produce it than for JBA to seek it out. This also applies to other public documents such as newspapers.

St. Paul argues that JBA will use this public information to "pester [St. Paul's insureds] or their attorneys about their claims." (St. Paul Mem. Opp. Mot. Compel Compliance at 12.) However, the Court finds that interviews with others involved in lawsuits based on the same policy language will likely lead to the discovery of admissible evidence. St. Paul is under no obligation to protect its other insureds from the consequences of engaging in public litigation on these issues.

### 3. Identity of St. Paul's Other Insureds and Other Insureds' Information

Documents withheld or redacted solely on the basis of "identifies insured" (Synder Aff. Ex. 2), must also be produced. However, they must be produced in some useful way. The Court has examined sample redacted documents attached to JBA's motion. (Snyder Aff. Ex. 4, 5.) St. Paul does not contend that these documents are not representative of its production. The Court finds that this production is nonresponsive. When the Court allowed St. Paul to redact identifying information, the Court presumed that would mean names, addresses, telephone numbers, social security numbers, tax payer I.D. numbers, policy numbers, and the like. The Court did not anticipate that St.

Paul would redact information related to the products at issue in the underlying claims, along with a myriad of other information. The redactions have rendered the documents worthless. Without knowing exactly how St. Paul handles its claims, the Court agrees with JBA's representation at the motion hearing that St. Paul's production is "not what the Court had in mind with [its] Order." The Court envisioned production which would contain, among other things, the following useful information:

(1) The type of claim filed;
(2) The facts involved;
(3) The policy language the claim is based upon;
(4) Discussions/memos regarding reasons for St. Paul's coverage decision including, but not limited to, communications with the insureds and in-house communications; and
(5) The reasons why St. Paul initially and/or eventually did or did not provide coverage.

It seems that the Claims History Reports should contain this information. However, the report the Court reviewed contains <u>none</u> of this important information. (Snyder Aff. Ex. 4.) At the motion hearing, JBA represented that unredacted Claims History Reports are the key documents it needs to prepare its case, and the Court agrees. St. Paul must provide <u>reasonably</u> redacted Claims History Reports to JBA, as described above. Redactions and withholdings based on more than obvious and cursory identification of St. Paul's other insureds are improper. St. Paul creates a fiction under which JBA will ascertain the identity of St. Paul's other insureds, many of whom are JBA's

competitors, and will use the information to harm the other insureds. (St. Paul Mem. Opp. Mot. Compel Compliance at 8.) This argument is specious because JBA will never see these documents. They will be produced For Attorneys' Eyes Only. The Court reached a fair compromise when it allowed St. Paul to redact obvious identifying information, and when it allowed production for Attorneys' Eyes Only. These protections are reasonable and effective. Moreover, these protections serve the purpose identified by St. Paul: "to prevent JBA from gaining access to the confidential information of St. Paul's other insureds and JBA's competitors." (Id.) St. Paul is needlessly failing to comply with the spirit of our discovery rules, and should trust the protections it helped incorporate into the stipulated protective agreement covering the case. Additionally, St. Paul initiated this litigation, and it is unfair for it to refuse to produce the most relevant discovery in this case: documents related to St. Paul's interpretation of its E & O policy language. Accordingly, St. Paul's objections based on the identity of its insureds are overruled.

**4. Information Concerning Settlement Negotiations**

St. Paul objects to producing information related to settlement negotiations which St. Paul conducted with its other insureds. St. Paul claims that its interest in protecting the identity of its insureds "far outweighs JBA's claimed interest in its discovery," and that the information is irrelevant and has "absolutely no bearing on the coverage positions St. Paul has taken or on St.

Paul's interpretation of it obligations under its policies." (St. Paul Mem. Opp. Mot. Compel Compliance at 10-11.) JBA states that St. Paul's objection is misplaced because information related to St. Paul's coverage positions is relevant, and that St. Paul cannot "refuse to produce information under a blanket assertion that it involves 'settlement issues.'" (JBA Mem. Supp. Mot. Compel Compliance at 11.) The Court agrees.

First, St. Paul did not assert this defense in its original objections to JBA's discovery requests or at the previous motion hearings. Therefore, the Court finds that St. Paul has waived this objection. See Fed. R. Civ. P. 33(b) (4); Fed. R. Civ. P. 34(b).

Second, after a review of one Claims History Report (Snyder Aff. Ex. 4), the Court finds that if it allowed St. Paul to assert this defense, St. Paul would likely withhold the majority of the information in the reports based on this defense. Tellingly, the very first redacted entry in Exhibit 4 is listed under the category "Negotiation/Resolution." (Id. at 1.) These correspondences and discussions are the very information JBA seeks, and this information is highly relevant to the coverage positions St. Paul has taken on claims based on the same policy language. It is the purpose of insurance companies to pay their insureds' legitimate claims, either initially or after a time of correspondence, clarification, and negotiation. The Court finds that this information is likely to lead to the discovery of admissible evidence regarding St. Paul's coverage

positions in cases based on the same policy language. Once again, the fact that the information will be produced on an Attorneys' Eyes Only basis will protect St. Paul's other insureds' proprietary information. Therefore, St. Paul's objections based on settlement negotiations are overruled.

### 5. Attorney-Client Privilege and the Work Product Doctrine

St. Paul has refused to produce scores of documents based on the work product doctrine and the attorney-client privilege. To the extent these objections are not addressed by the Court's refusal to allow St. Paul to assert a joint defense privilege at this late date, the Court finds that the majority of St. Paul's work product and attorney-client privilege objections must still be overruled. The privilege log demonstrates that most of these objections are proffered for items involving "discussions of claim," "content of claim and defense issues," "analysis of claim," "coverage issues," "settlement negotiations and settlement offers," "coverage positions," and "settlement offers." (Snyder Aff. Ex. 2 passim). These communications, even if they involve attorneys, are not protected by the attorney-client privilege or the work product doctrine.

#### a. Attorney-Client Privilege

The attorney-client privilege protects communications made between a lawyer and the client in confidence for the purpose of seeking, obtaining, or providing legal assistance. See Restatement (Third) of the Law Governing Lawyers § 118 (Proposed Final Draft 1996); Fed. R. Evid. 503. The

purpose of the privilege is "to encourage full and frank communications between attorneys and their clients," and "the privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice." Upjohn Co. v. United States, 449 U.S. 383, 389, 391 (1981). The attorney-client privilege is strictly construed. See Diversified Indus., Inc. v. Meredith, 572 F.2d 596, 602 (8th Cir. 1978).

The communications in the privilege log evidence St. Paul's attempts to negotiate insureds' claims. That is the business of insurance companies, not lawyers. Simply choosing to have attorneys involved in its business decisions does not shield the documents from discovery under the attorney-client privilege. See Mission Nat'l Ins. Co. v. Lilly, 112 F.R.D. 160, 163 (D. Minn. 1986) (citing Diversified Indus., 572 F.2d at 602 ("If an attorney is acting . . . as an ordinary businessman . . . the privilege may not properly be claimed.")) In addition, St. Paul is withholding several documents sent from its insureds' counsel to St. Paul on the basis of the attorney-client privilege. The Court does not understand how communications with, and especially from, the opposing counsel represent communications for the purpose of seeking legal advice. St. Paul cannot invoke a privilege it does not hold. Therefore, these documents must be produced.

**b. Work Product Doctrine**

The Federal Rules of Civil Procedure codify "the work product doctrine" and provide, in pertinent part:

> "[A] party may obtain discovery of documents and tangible things . . . prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative . . . only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.

Fed. R. Civ. P. 26(b)(3).

The Supreme Court has stated that the purpose of the doctrine is to prevent "unwarranted inquiries into the files and mental impressions of an attorney." Hickman v. Taylor, 329 U. S. 495, 510 (1947). The work product doctrine is based on the reasoning that a lawyer must "work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel." Id. However, the protection is a qualified one and the protection will not attach unless documents were prepared specifically in anticipation of litigation. See Simon v. G.D. Searle & Co., 816 F.2d 397, 401 (8th Cir. 1987). Documents prepared "in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes" do not fall under the protection of the work product doctrine. Fed. R. Civ. P. 26(b)(3) advisory committee's note (1970 amendment); see also Simon, 816 F.2d at 401.

The fact that a party "anticipates the contingency of litigation resulting from an accident or event" does not bestow automatic work product protection. See Mission Nat'l, 112 F.R.D. at 163 (citation omitted); Diversified Indus., 572 F.2d at 604 (holding that concerns that employee conduct may result in litigation is not enough to give attending investigation reports work product status). Furthermore, merely involving an attorney in normal business activities or transferring documents to an attorney or legal department does not make them privileged under the doctrine. See Peterson v. Douglas County Bank & Trust Co., 967 F.2d 1186, 1189 (8th Cir. 1992) (citations omitted). In addition, lest over-application of the work product doctrine "eviscerate the discovery rules and their purpose," everything that contains an "inkling of a lawyer's mental impressions, conclusions, opinions or legal theories" is not work product. Mead Corp. v. Riverwood Natural Res. Corp., 145 F.R.D. 512, 520 (D. Minn. 1992). Moreover, relevant facts are not work product because they do not necessarily implicate the origin of the facts that will be used by a party or an attorney's impressions regarding those facts. See id. at 518. One must keep in mind that "knowledge of all relevant facts gathered by both parties is essential to proper litigation." Id. at 520.

St. Paul's privilege log demonstrates that the majority of the claimed communications implicate coverage decisions, not legal decisions. To the extent St. Paul claims that it weighs all coverage decisions with an eye

towards litigation, that assertion is misplaced. Simply anticipating litigation, even if it is very likely, does not give rise to the protection. See Mission Nat'l, 112 F.R.D. at 163 (citations omitted). Therefore, these documents must be produced. Again, St. Paul is withholding several documents sent from the insureds' counsel to St. Paul. Communications from attorneys for opposing parties do not implicate St. Paul's work product. Therefore, these documents must be produced.

Many entries in St. Paul's thirty-three page privilege log are incomplete. For example, some entries list only one party to a communication. In order to be useful, JBA needs to know who sent the communication, and to whom it was addressed. In addition, some entries are merely identified as "e-mail," without identifying the subject matter. Once St. Paul complies with the Court's Order, it must provide JBA with a new privilege log which includes complete entries for all documents still being withheld.

### c. Properly Withheld Documents

Notwithstanding the above, the Court finds that the privilege log shows that the following documents are properly withheld on the basis of the attorney-client privilege, the work product doctrine, or both.

(1) Bates Nos. STP 27429-27433;

(2) Bates No. STP 27627;

(3) Bates Nos. STP 28370-71;

(4) Bates Nos. STP 28376-78;

(5) Bates Nos. STP 29452-62;

(6) Bates Nos. STP 32484;

(7) Bates Nos. STP 32757;

(8) Bates Nos. STP 33386-93;

(9) Bates Nos. STP 33421-32;

(10) Bates Nos. STP 33938-52 (only the portions related to "case status" are properly withheld);

(11) Bates Nos. STP 34053;

(12) Bates Nos. STP 35433-59;

(13) Bates Nos. STP 35786 (only the portions related to "legal issues" are properly withheld);

(14) Bates Nos. STP 36081-92;

(15) Bates Nos. STP 36509-19;

(16) Bates Nos. STP 36563;

(17) Bates Nos. STP 36572;

(18) Bates Nos. STP 36843-47;

(19) Bates Nos. STP 37177-83;

(20) Bates Nos. STP 37432-36; and

(21) Bates Nos. STP 38583-86.

These documents need not be produced.

**6. Redactions**

St. Paul avers that it has provided information related to "the issues in each claim and St. Paul's responses to those issues." (St. Paul Mem. Opp. Mot. Compel Compliance at 2) (quoting the Order). However, if Exhibit 4 to Richard Snyder's affidavit is any indication of St. Paul's compliance, St. Paul is either disregarding the Order or is unaware as to what coverage "issues" are relevant to this case. Exhibit 4 to the Synder affidavit contains an example of St. Paul's redacted Claim History Reports. Exhibit 4 contains no information related to the type of claim, the type of coverage, or the decisions reached by St. Paul. St. Paul does not claim that this exhibit is not representative of the redacted documents it has produced. In addition, the Court agrees with JBA that "Activity Logs" which contain the notes and activities of St. Paul's claims handlers will likely contain information relevant to St. Paul's coverage determinations. St. Paul must provide this information.

The one piece of information the Court is able to glean from Exhibit 4 is that many of the file entries are under the categories "negotiation/resolution," "coverage," or "liability evaluation." Information related to these topics is very relevant to this case. Unfortunately, categories are not listed for many other entries. The only entries that appear to be legitimately redacted are those under the "litigation" category.

St. Paul has not provided a log identifying the bases for its many redactions. St. Paul avers that it would be a "Herculean task" to log the hundreds of thousands of redactions in the documents it produced. (St. Paul Mem. Opp. Mot. Compel Compliance at 4.) Instead, St. Paul has offered to explain its choices on a case by case basis, at JBA's request. (Id.) St. Paul asserts that its redactions are appropriate, and that the information was redacted because "[t]he whole point of permitting St. Paul to redact identifying information was to prevent JBA from gaining access to the confidential information of St. Paul's other insureds and JBA's competitors." (Id.) This argument is misplaced. The Attorneys' Eyes Only disclosure guarantees that JBA will not access competitors' proprietary information. Contrary to St. Paul's assertions, the Court is not convinced that St. Paul has produced all communications related to "the issues in each claim and St. Paul's responses to those issues." (Id. at 6.) The documents the Court reviewed do not contain information related to any issues. For all intents and purposes, they are blank documents.

The Court is confident that once St. Paul complies with this Order the vast majority of its redactions will be moot, and the information will be produced. To the extent St. Paul continues to redact its production, St. Paul must provide a privilege log to support its privilege contentions. See Fed. R. Civ. P. 26(b)(5). The task will only be "Hurculean" if St. Paul continues with its

monumental attempts to evade discovery production. It is St. Paul's burden to demonstrate that its assertion of privileges is appropriate.

In conclusion, the Court finds that St. Paul has not fully complied with the Order. St. Paul has improperly withheld many documents. The Court has determined that the majority of St. Paul's objections are without merit. St. Paul must fully respond to the discovery ordered by this Court on September 12, 2002 within forty-five days of this Order.

Based upon all the files, records, and proceedings herein, **IT IS HEREBY ORDERED:**

(1) JBA International's Motion to Compel Discovery (Doc. No. 93 in case 01-CV-297 and Doc. No. 107 in case 01-CV-2161) is **GRANTED IN PART**, **DENIED IN PART**, and **DENIED AS MOOT IN PART** as set forth fully in the body of this Order;

(2) JBA International's Motion to Compel Compliance with Order Regarding Other Claims Filed (Doc. No. 96 in case 01-CV-297 and Doc. No. 110 in case 01-CV-2161) is **GRANTED IN PART** and **DENIED IN PART** as set forth fully in the body of this Order;

(3) St. Paul Mercury Insurance Company must fully respond to any outstanding and deficient discovery requests by July 14, 2003; and

(4) St. Paul Mercury Insurance Company must provide JBA International with a privilege log detailing its reasons for withholding and redacting documents otherwise subject to production.

Dated: May 29, 2003

JONATHAN LEBEDOFF
Chief United States Magistrate Judge